**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **Case No. 1:05cr225** |
| | ) | |
| | ) | |
| STEVEN J. ROSEN | ) | |
| KEITH WEISSMAN | ) | |

## <u>MEMORANDUM OPINION</u>

At issue in this Espionage Act prosecution is the government's motion to introduce at trial evidence directly contrary to an overt act contained within the superseding indictment. Specifically, the United States seeks leave to be allowed to prove that a document specifically referred to in Overt Act 32 of Count One of the superseding indictment as "not classified," is, in fact, classified. The government asserts that proof at trial that the document is classified is a mere variance of the superseding indictment and therefore permissible. Defendants, not surprisingly, oppose this motion, arguing that permitting the government to offer this contradictory proof would amount to an impermissible constructive amendment of the superseding indictment, and thus the motion should be denied.

**I.[1]**

Defendants Rosen and Weissman are former lobbyists with the American Israel Public Affairs Committee (AIPAC) and are charged in Count I of a superseding indictment with

---

[1]For a more complete recitation of the facts *see United States v. Rosen*, Case No. 1:05cr225 (August 9, 2006) (Memorandum Opinion denying the defendants' motion to dismiss).

conspiracy to communicate information relating to the national defense[2] to one not entitled to

receive it in violation of 18 U.S.C. § 793(d), (e) and (g).  Alleged co-conspirator Lawrence

Franklin has already pled guilty to this count and has been sentenced.  *See United States v.*

*Franklin*, Case No. 1:05cr225 (January 20, 2006) (Order of Judgment).

In describing the alleged conspiracy, Count One of the superseding indictment, *inter alia*,

alleges that "[i]t was a part of the conspiracy that, in an effort to influence persons within and

outside the United States government, ROSEN and WEISSMAN would cultivate relationships

with FRANKLIN and others and would use their contacts within the U.S. government and

elsewhere to gather sensitive U.S. government information, including classified information

relating to the national defense, for subsequent unlawful communication, delivery and

transmission to persons not entitled to receive it."  In support of this allegation, Count One lists

fifty-seven overt acts in furtherance of the conspiracy, including Overt Act 32, which provides as

follows:

> On or about June 24, 2003, WEISSMAN called FRANKLIN and asked
> FRANKLIN to obtain a document for him.  While the document itself was not
> classified, WEISSMAN told FRANKLIN that he knew the "Agency" had a copy.
> FRANKLIN told WEISSMAN he would try to get WEISSMAN a copy and that
> he had a friend at the CIA if he could not get it anywhere else.

Significantly, this is the only overt act in which one of the defendants is alleged to have

requested a document from a government official.  While defendants are alleged to have

discussed classified information with government officials, including information contained in

---

[2]Although not strictly necessary, nor always sufficient, the classification of information is
highly probative of whether it is, in fact, "information related to the national defense" such that a
defendant could be prosecuted for its unauthorized disclosure.  *See United States v. Rosen*, Case
No. 1:05cr225, Docket #337 at 29 (August 9, 2006) (Memorandum Opinion denying defendants'
motion to dismiss).

classified documents, the superseding indictment does not allege that either Rosen or Weissman

ever sought an actual copy of any classified document from a government official.  The

government now seeks permission to prove at trial that, contrary to the express language of Overt

Act 32, Weissman did seek a classified document.  The question presented is whether the Fifth

Amendment's Grand Jury Clause[3] permits the government to do so.

## II.

The resolution of this issue depends on whether allowing the government to prove that

the document referenced in Overt Act 32 is classified despite the superseding indictment's

contrary language amounts to (1) a constructive amendment of the superseding indictment

prohibited by the Fifth Amendment, or (2) a mere variance, which is permissible provided it does

not "prejudice[] the defendant either by surprising him at trial and hindering the preparation of

his defense, or by exposing him to the danger of a second prosecution."  *United States v. Randall*,

171 F.3d 195, 203 (4th Cir. 1999).  In this respect it has long been settled that the Fifth

Amendment's grand jury guarantee does not "'permit a defendant to be tried on charges that are

not made in the indictment against him,' and therefore [] 'after an indictment has been returned

its charges may not be broadened through amendment except by the grand jury itself.'"  *United*

*States v. Miller*, 471 U.S. 130, 143 (1985) (internal citations omitted).  In addition, the Supreme

Court made clear in *Stirone v. United States*, 361 U.S. 212 (1960), that even if an indictment is

not formally amended by the district court, allowing proof of evidence which constructively

amends the indictment is *per se* error.  *Id.* at 217 ("Although the trial court did not permit a

---

[3]The Grand Jury Clause reads: "No person shall be held to answer for a capital, or
otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

formal amendment of the indictment, the effect of what it did was the same."). In *Stirone* the defendant had been indicted for unlawfully interfering with interstate commerce through the use of extortion and threats of physical violence to obstruct a contract for the interstate delivery of *sand*, in violation of the Hobbs Act, 18 U.S.C. § 1951. *Id.* at 213-14. Over the defendant's objection, the district judge permitted the government "to offer evidence of an effect on interstate commerce not only in sand . . . but also in interference with *steel* shipments . . . ." *Id.* at 214 (emphasis added). The Supreme Court found the admission of this evidence to be *per se* error because "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215-16. As the Supreme Court put it, "[t]he right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Id.* at 218-19.

The general rule, recognized in *Stirone*, that the government may not broaden the basis for a jury's conviction by offering proof in addition to (or contrary to) what is contained in the indictment has been recognized in subsequent Supreme Court and Fourth Circuit decisions. Thus, in *United States v. Miller*, 471 U.S. 130 (1985), the Supreme Court ruled that it was not a constructive amendment of the indictment when a defendant was convicted on the basis of proof of a criminal plan narrower than, but fully included within, the plan set forth in the indictment. *Id.* at 137. Significantly, however, in reaching this result, the Supreme Court reaffirmed *Stirone's* holding that a defendant cannot be tried on evidence "*not* fully contained in the indictment" and that it was error to allow "trial evidence [to] 'amend[]' the indictment by *broadening* the possible bases for conviction from that which appeared in the indictment.'" *Id.* at 138. Similarly, in *United States v. Floresca*, 38 F.3d 706 (4th Cir. 1994), the Fourth Circuit,

sitting *en banc*, held that a "constructive amendment to an indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, *broadens the possible bases for conviction beyond those presented by the grand jury*." *Id.* at 710 (emphasis added).[4]   In contrast, a mere variance occurs when the government presents proof contrary to that which is alleged in the indictment, but the difference is not material to any essential element of the crime.  *See Floresca*, 38 F.3d at 709-10.  For example, if an indictment alleges that a defendant wielded a black revolver while robbing banks, but the proof at trial was that the revolver was silver, there has been no constructive amendment because the color of the handgun is not a fact material to the offense. *United States v. Redd*, 161 F.3d 793, 797 (4th Cir. 1998); *see also United States v. Ford*, 986 F.2d 57, 59 (4th Cir. 1993) (finding no impermissible variance where length of sawed-off shotgun introduced at trial differed from that given in indictment).  Thus, if the classification status of the document is immaterial to the charge of conspiracy, the government's proposed proof is a mere variance and not a constructive amendment.

Although not binding here, the Eleventh Circuit's decision in *United States v. Keller*, 916 F.2d 628 (11th Cir. 1990), is instructive.  In *Keller*, Count Three of the indictment charged

---

[4]*See also United States v. Bolden*, 325 F.3d 471, 493 (4th Cir. 2003) ("An indictment is constructively amended 'when the essential elements of the offense . . . are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'") (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir.1990)); *United States v. Redd*, 161 F.3d 793, 795 (4th Cir. 1998) ("[A]s long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible.") (quoting *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996)); *United States v. Downer*, 143 F.3d 819, 822 (4th Cir.1998) (finding constructive amendment when trial court substituted another offense for that charged in indictment); .

defendant Keller with conspiring with a specific named co-conspirator, but the district judge

instructed the jury that it could convict Keller for conspiring "with *anyone*, even someone not

named in the indictment." *Id.* at 632.  In the course of its analysis, the Eleventh Circuit described

the "distinction between an amendment and a variance" as follows:

> [A]n amendment occurs when the essential elements of the offense contained in
> the indictment are altered to broaden the possible bases for conviction beyond
> what is contained in the indictment.  A variance occurs when the facts proved at
> trial deviate from the facts contained in the indictment but the essential elements
> are the same.

*Id.* at 634.  Finding that the identity of Keller's co-conspirator was an essential element of the

indictment, despite the fact that the indictment could have simply charged Keller with conspiring

with an unknown person, the Eleventh Circuit found that "the instructions allowed the jury to

convict the defendant on grounds not alleged in the indictment, thereby modifying an essential

element of the offense charged and broadening the possible bases for conviction."  *Id.* at 636.

Because the trial court constructively amended the indictment, Keller's conviction on Count

Three was reversed.  *Id.* at 637.

These principles, applied here, leave no doubt that the evidence the government seeks to

offer, namely that the document referred to in Overt Act 32 is, in fact, classified, is essential to

the charged offense and would substantially broaden the basis for the defendants' conviction for

the crime alleged.  It is important to begin the analysis by noting that the defendants are charged

with "conspiring to gather sensitive U.S. government information, including *classified*

*information* relating to the national defense, for subsequent unlawful communication."

(emphasis added).  Not surprisingly, the parties hotly contest whether the defendants sought

classified information.[5]  Indeed, defendants' position at trial is likely to be that they never sought

classified information, and that if classified information was ever disclosed to them it was done

so orally, and either (1) in circumstances in which they did not realize that the information was

classified, or (2) at the initiation of the government official for the purpose of advancing United

States foreign policy thereby, implicitly granting defendants the authority to receive and

retransmit the information.  It is clear, therefore, that whether the defendants sought classified

information is an important part of the charged conspiracy.  Simply possessing information

related to the national defense is not, itself, punishable under the substantive provisions of

§ 793,[6] but conspiring to obtain such information from Franklin is punishable because § 793(g)

would make the defendants liable for Franklin's unauthorized disclosures.[7]  For this reason,

evidence tending to prove the defendants attempted to obtain classified government information

is essential to the conspiracy charged in the superseding indictment.

As noted, the superseding indictment contains no allegations that the defendants sought

---

[5]Indeed, the parties dispute whether the document referenced in Overt Act 32 is classified, as the government now asserts.  *See infra* Part III.

[6]The defendants could be charged for obtaining and retaining *tangible* items related to the national defense under § 793(e)'s retention clause which applies to anyone who "willfully retains [material related to the national defense] and fails to deliver it to the officer or employee of the United States entitled to receive it."  18 U.S.C. § 793(e).  Because punishing someone for the willful retention of intangible information, *i.e.*, knowledge, is absurd, this clause could not apply to the information alleged to have been disclosed orally to Rosen and Weissman, nor are they charged under this clause.  *See United States v. Rosen*, Case No. 1:05cr225, Docket #337 at 14-15 (August 9, 2006) (Memorandum Opinion denying the defendants' motion to dismiss).

[7]18 U.S.C. § 793(g) ("If two or more persons conspire to violate any of the foregoing provisions of this section, and one or more of such persons do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be subject to the punishment provided for the offense which is the object of such conspiracy.").

any classified documents.  Therefore, allowing the government to prove that the document

referred to in Overt Act 32 was classified significantly broadens the bases for a conviction under

Count One.  Just as the bases for convicting Stirone of violating the Hobbs Act was

unconstitutionally broadened by permitting the government to prove that Stirone used extortion

and threats to obstruct the interstate trade of steel when the indictment only alleged obstruction of

the interstate trade in sand,[8] and just as Keller's indictment was constructively amended by

permitting the jury to convict Keller of conspiring to rob banks with anyone when the indictment

alleged a conspiracy with a specifically named person,[9] so too, the bases for convicting the

defendants here (especially defendant Weissman) of conspiracy to gather and retransmit

information relating to the national defense would be unconstitutionally broadened by allowing

the government to prove that Weissman had sought a classified document, as opposed to an

unclassified document.  In sum, permitting the government to prove that the document referenced

in Overt Act 32 was classified materially alters an essential fact alleged in the superseding

indictment and broadens the bases for conviction.   It is therefore error *per se*.  Accordingly, the

government's motion must be denied.

### III.

Seeking to avoid this conclusion, the government offers an alternative whereby it will not

offer evidence that the official, publicly distributed copies of the foreign government's document

was a classified document, but will seek instead to offer proof only that the "Agency's" identical

copy of that document is classified.  The government contends that such proof would not be

---

[8]*Stirone*, 361 U.S. at 215-16.

[9]*Keller*, 916 F.2d at 636.

inconsistent with the language of Overt Act 32 and therefore not a constructive amendment.  This

clever argument is not without some appeal, but ultimately fails, as it amounts to an attempted

end run around the constitution's prohibition against constructive amendments of indictments.

Yet, even assuming, *arguendo*, that this argument avoids the constructive amendment bar, it

nonetheless fails as an evidentiary matter.  While sophisticated persons thoroughly familiar with

the government's classification scheme may understand the distinction between a publicly

available unclassified document and the United States' classified copy of *the exact same*

*document*, the risk that this proposed distinction may mislead the jury into believing that

Weissman sought a classified document, and the unfair prejudice to the defendants that would

result, substantially outweighs the probative value of such proof, and accordingly, such evidence

is appropriately excluded pursuant to Rule 403, Fed.R.Evid.

An appropriate Order will issue.


_____/s/_____

Alexandria, VA                                              T. S. Ellis, III
August 11, 2006                                          United States District Judge