IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 1:05cr225 |
| ) | |
| STEVEN J. ROSEN and ) | |
| KEITH WEISSMAN ) | |

## MEMORANDUM OPINION

At issue in this Espionage Act prosecution is defendants' motion for a show cause hearing, sanctions, and dismissal of the indictment in response to alleged violations of Rule 6(e), Fed. R. Crim. P. The gravamen of defendants' motion is (i) that numerous media reports regarding the lengthy FBI investigation into defendants evince a violation of Rule 6(e)'s grand jury secrecy requirement by an officer of the government, and (ii) that a hearing is necessary to determine the scope of the violation and an appropriate remedy. Defendants have not established a *prima facie* Rule 6(e) violation, and accordingly, no hearing is warranted.

I.

Defendants Steven Rosen and Keith Weissman are charged in a superseding indictment with conspiracy to disclose national defense information ("NDI") to persons not authorized to receive it, in violation of 18 U.S.C. §§ 793(g) and 793(e), and Rosen is further charged with aiding and abetting alleged co-conspirator Lawrence Franklin's disclosure of NDI to persons not authorized to receive it, in violation of 18 U.S.C. §§ 2 and 793(d).[1] A sealed complaint against

---

[1] A more complete recitation of the allegations in the superseding indictment can be found in the August 9, 2006 Memorandum Opinion addressing defendants' constitutional challenges to 18 U.S.C. § 793.

Franklin was filed May 3, 2005, a sealed indictment of Franklin was returned May 26, 2005, and the superseding indictment naming defendants was returned August 4, 2005.

Prior to any charges being filed, the existence of the investigation was in the news as early as August 2004. Defendants point to eighteen media reports as evidence that a Rule 6(e) violation has occurred. The reports can be usefully grouped and summarized as follows.

The first group of stories issued in late August 2004. In August 27 and 28, 2004 broadcasts, CBS News reported that the FBI was investigating a suspected mole at the Pentagon, whom "the FBI believes . . . supplied Israel with classified materials," that two AIPAC employees were at the heart of the investigation, and that the investigation involved "wiretaps, undercover surveillance, and photography that . . . document the passing of classified information from the mole to the men at AIPAC and on to the Israelis." A CNN story from August 27 reported that "the FBI has evidence indicating there may be a high-level spy in the Pentagon" who was "allegedly spying on behalf of Israel," and quoted the CBS story about surveillance methods in the case. Three days later, on August 30, 2004, a CBS broadcast identified the Pentagon spy as Lawrence Franklin, stated that Franklin was cooperating with the government, and reported that the current focus of the investigation was on whether Franklin passed classified planning papers about U.S. policy towards Iran to lobbyists, who then gave the information to Israel. It also noted that FBI agents searched AIPAC offices and interviewed staff members there, and it noted that law enforcement officials did not object to the timing of the report.

Next, a cluster of stories appeared in early September 2004. A New York Times piece dated September 1, 2004 quoted both "government officials" and AIPAC lawyer Nathan Lewin to the effect that the FBI had interviewed defendants. A Miami Herald story, published the next

day, confirmed that defendants were the targets of the investigation. A Newsweek story from September 13 provided more details about the search of the AIPAC offices and indicated that "law enforcement" sources said arrests might be imminent.

The next crop of media stories are clustered in early May 2005, about the time Franklin was charged in a criminal complaint but before the superseding indictment charging defendants was returned. A New York Times story from May 4 reported that the two AIPAC officials alleged to have conspired with Franklin were defendants, who had been under scrutiny in the Franklin investigation. Washington Post, Los Angeles Times, Chicago Tribune, and USA Today stories from May 4 and 5 were to the same effect, some quoting "law enforcement sources." A May 14, 2005 Washington Post story reported that, "according to people who have been officially briefed on the case," Franklin made calls to possible subjects in the case, including defendant Weissman.

Next, a June 14, 2005 New York Times story reported that defendants were the unidentified individuals in Franklin's indictment who received classified information. This essentially echoed a Times story from a day earlier. The June 14 story also reported that defendants had been notified that they would be charged. An Associated Press story that same day reported that "government officials and lawyers in the case said the [foreign official] in the Franklin indictment was Naor Gilon" and that the unidentified Middle Eastern country in the Franklin indictment was Iran.

Finally, an August 4, 2005 Reuters story stated that federal prosecutors planned to announce additional charges against Franklin and to charge defendants, citing "government sources." (The indictment against defendants was returned later that day.) The story also quoted

3

Franklin's lawyer to the effect that prosecutors had long threatened charges against defendants. Also cited is an August 25, 2005 story in Jewish Week quoting then-United States Attorney Paul McNulty's announcement of the August 4, 2005 indictment of defendants.

Worth noting in addition to the content of the media reports are the reports' stated sources of the information. The various media reports cited quote unnamed "senior administration officials," "U.S. officials," "U.S. government officials," "officials," "investigators," "law enforcement sources," "sources familiar with the investigation," "people who have been officially briefed on the case," and in one instance, simply "sources" without any further description. Also identified by name are AIPAC attorney Nathan Lewin and then-United States Attorney Paul McNulty.

In short, the media reports rely on unnamed government sources to reveal some details of law enforcement's efforts in this extensive investigation involving the FBI, the Department of Justice, and a grand jury. Importantly, the reports cite no grand jury transcripts, reveal no grand jury testimony, name no grand jury witnesses, and (with the arguable exception of the Reuters story, discussed later) do not reveal the expected course of future grand jury investigation or deliberation. On the basis of these news stories, defendants seek first an evidentiary hearing, and eventually sanctions and dismissal of the indictment, as remedies for the allegedly unlawful disclosures of grand jury matters.

## II.

Rule 6(e)(2), Fed. R. Crim. P., prohibits disclosure of a "matter occurring before the grand jury" by, *inter alia*, government attorneys or government personnel assisting in enforcing federal criminal law. To constitute a Rule 6(e) violation, a disclosure must (i) involve a "matter

occurring before the grand jury," and (ii) involve a person subject to Rule 6(e)'s secrecy requirements. *Finn v. Schiller*, 72 F.3d 1182, 1189 n.7 (4th Cir. 1996).

Rule 6(e) does not define "matters occurring before the grand jury," but caselaw elucidates the phrase. The Fourth Circuit has explained that "the substantive content of 'matters occurring before the grand jury' can be anything that may reveal what has transpired before the grand jury." *In Re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990) (internal citations omitted). Importantly, however, the rule protects only "the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *Id.* In other words, a disclosure of "matters before the grand jury" must reveal some "secret aspect of the inner workings of the grand jury." *United States v. Dynavac*, 6 F.3d 1407, 1413 (9th Cir. 1993). Significantly, the Fourth Circuit has also held that disclosure of the details of a government investigation that is independent of a parallel grand jury investigation does not violate Rule 6(e). *In Re Grand Jury Subpoena*, 920 F.2d at 242-43.[2] Likewise, even evidence closely related to a grand jury investigation is not a "matter occurring before the grand jury"

---

[2] Other circuits agree. *See e.g. In Re Grand Jury Matter (Catania)*, 682 F.2d 61, 64 (3rd Cir. 1982) ("disclosure of information obtained from a source independent of the grand jury proceeding, such as a prior government investigation, does not violate Rule 6(e)" even when the information is "developed with an eye towards ultimate use in a grand jury proceeding" if it "exists apart from and was developed independently of grand jury processes.") (internal citations and quotations omitted); *Lance*, 610 F.2d at 217 ("disclosure of information obtained from a source independent of the grand jury proceedings, such as a prior government investigation, does not violate Rule 6(e)"); *In Re Sealed Case 99-3091*, 192 F.3d at 1002 ("Information actually presented to the grand jury is core Rule 6(e) material that is afforded the broadest protection from disclosure. Prosecutors' statements about their investigations, however, implicate the Rule only when they directly reveal grand jury matters."); *Anaya v. United States*, 815 F.2d 1373, 1380 (10th Cir. 1987) (distinguishing between a memorandum describing a grand jury witness' testimony and a memorandum describing the same person's interview with an investigator outside the grand jury room.).

unless it was actually presented before the grand jury. *See In Re Grand Jury Subpoena*, 920 F.2d at 242 (citing *Anaya v. United States*, 815 F.2d 1373 (10th Cir. 1987)). Courts have also held, with appropriate caution, that the term "matters occurring before the grand jury" includes details about the grand jury's likely course of conduct in the near future, although no Rule 6(e) violation in this regard occurs unless the disclosure contains details about the grand jury's inner workings or proceedings. *See In Re Grand Jury Investigation (Lance)*, 610 F.2d 202 (5th Cir. 1980); *In Re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999); *United States v. Flemmi*, 233 F. Supp. 2d 75 (D.Mass. 2000).[3] Typically cited as examples of Rule 6(e) violations are disclosures that reveal the identity of grand jurors or expected witnesses, reveal witness' expected testimony or questions they would be asked, reveal transcripts or the substance of testimony, reveal the strategy or direction of a grand jury investigation, or report when the grand jury will return an indictment. *See Lance*, 610 F.2d at 217;[4] *In Re Sealed Case no. 99-301*, 192 F.3d at 1001; *Flemmi*, 233 F. Supp. 2d at 79.

It is important to bear in mind that law enforcement investigations typically precede, or occur simultaneously with but independently of, grand jury investigations. Leaks of information

---

[3] Even courts that have recognized that "matters occurring before the grand jury" includes matters "likely to occur before the grand jury in the future" have sensibly noted the potential for mischief if this formulation is applied too liberally. *See In Re Sealed Case No. 99-3091*, 192 F.3d at 1001. In other words, Rule 6(e) should not be read to require a "veil of secrecy be drawn over all matters occurring in the world that happen to be investigated by a grand jury." *Id.* at 1001-02 (citing *Securities & Exch. Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1382 (D.C. Cir.1980)).

[4] *Lance* has been criticized in this circuit for its holding that grand jury targets have a private right of action for injunctive relief against further Rule 6(e) violations. *Compare Lance*, 610 F.2d at 209; *with Finn v. Schiller*, 72 F.3d 1182, 1188-89 (4th Cir. 1996). Yet for present purposes, *Lance'*s discussion of whether matters likely to be considered by the grand jury are within the scope of Rule 6(e) remains valid.

from law enforcement investigations that relate to matters under grand jury investigation do not concern "matters before the grand jury," unless, of course, they disclose secret details about proceedings inside the grand jury room. In other words, as the D.C. Circuit has aptly stated, "the disclosure of information coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury is not prohibited" by Rule 6(e). *In Re Sealed Case 99-301*, 192 F.2d at 1001-02 (internal citations and quotations omitted). Likewise, a distinction must be drawn between "statements by a prosecutor's office with respect to its own investigation, and statements by a prosecutor's office with respect to a *grand jury's* investigation," because the latter is a Rule 6(e) violation while the former is not. *Id.* at 1002. In sum, disclosures of information concerning a criminal investigation violate Rule 6(e) only where the matters disclosed are "matters occurring before the grand jury," which phrase, as elucidated by the courts, means that Rule 6(e) is implicated only if the matters disclosed concern the details of the grand jury's past or future proceedings.

The threshold issue to resolve here is whether defendants' claims of Rule 6(e) violations based on the cited media reports warrant an evidentiary hearing. Because law enforcement investigations often parallel grand jury investigations, news reports about such investigations or its targets may emanate from either or both sources, and thus may or may not constitute disclosures violative of Rule 6(e). *See supra* note 2 and accompanying text. Courts have therefore sensibly determined that a hearing on a claimed Rule 6(e) violation will not be held absent a showing of a *prima facie* Rule 6(e) violation. *See Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989). A *prima facie* case is one which "has proceeded upon sufficient proof to that stage where it will support finding if evidence to the contrary is disregarded." *See*

*Black's Law Dictionary* 1353 (4th ed. 1951) (citing cases).  If evidence establishes a *prima facie* Rule 6(e) violation, a hearing must be held to determine whether a violation occurred.  If no *prima facie* case is shown, no hearing is warranted, and *a fortiori* the claim fails.

      All of these principles, applied here, compel the conclusion that no hearing on defendants' claims is warranted, as the cited media reports do not establish a *prima facie* violation of the rule.  It follows *a fortiori* that the reports fall far short of establishing a Rule 6(e) violation.  Simply put, the media reports do not contain the detail and specificity necessary to reflect a disclosure of "matters occurring before the grand jury."  In particular, the media reports identify no grand jury witnesses, disclose no questions that were asked or would be asked of witnesses in the grand jury, nor do the reports even describe or summarize any grand jury witness' testimony.  Indeed, the reports never even mention a grand jury investigation.  Instead, the reports reference only a "government investigation," which can, and in this case did, take many forms independent of a grand jury inquiry.  Indeed, most of the stories merely report about the fruits of the FBI investigation or report publicly available information about the prosecution.  When grand jury activity was mentioned at all, it was merely to announce that the Franklin indictment had been unsealed.  Further, while some stories reported that the focus of the FBI's investigation was turning from Franklin to the defendants, there is no intimation in those stories that a grand jury was even investigating the matter, let alone that the course of any grand jury investigation had similarly shifted.  While the August 4, 2005 Reuters story did report shortly before the indictment that prosecutors planned to announce charges against defendants, thereby arguably disclosing the grand jury's imminent course of conduct, even that story does not contain the details necessary to reflect that a disclosure of the grand jury's inner workings occurred.

Thus, the Reuters story does not specifically state that defendants would be indicted by a grand jury, but rather only that they would be charged, *i.e.*, the story is ambiguous as to whether defendants would be indicted or made the subject of a criminal complaint; indeed, the existence of a grand jury is not even mentioned.  Moreover, the Reuters story does not identify the specific charges to be brought against defendants, nor does it describe any evidence presented to the grand jury.  Simply put, the Reuters story, like all the others, does not disclose "matters occurring before the grand jury," nor support an inference that such disclosures occurred.

      Particularly instructive, and supportive of the result reached here, is a comparison of the facts in this case with the facts of other cases where courts have found *prima facie* evidence of a Rule 6(e) violation.  For example, the media reports in *Lance* revealed, *inter alia,* (i) that an indictment would not issue until the next calendar year, (ii) that a particular witness had declined to testify before the grand jury, (iii) that the grand jury investigation was widening to include the period when Lance was White House budget director, and (iv) that the grand jury investigation was seeking to determine if Lance misapplied bank funds.  *Lance*, 610 F.2d at 218 n.8-n.10.  Similarly, in *Flemmi*, the media reports included such details as the following: (i) that grand jury subpoenas had issued to six FBI agents, (ii) that a particular FBI agent was called as a grand jury witness, (iii) that a particular mafia boss testified before the grand jury, and (iv) that the grand jury was probing series of real estate transactions involving a particular FBI agent.  *See Flemmi*, 233 F. Supp. 2d at 82-86.  A comparison of the media reports in *Lance* and *Flemmi* with the media reports at issue is telling.  Unlike the reports in *Lance* and *Flemmi*, defendants' cited reports here make no explicit reference to grand jury proceedings and lack the specificity and detail that would warrant an inference that the disclosures relate to "matters occurring before the

9

grand jury."

In sum, it is apparent that defendants' cited media reports fall short of establishing a *prima facie* case of disclosure of any "matters occurring before the grand jury," and hence defendants' claims in this regard must fail.

An appropriate Order will issue.

<table>
<tr><td>January 26, 2007<br>Alexandria, Virginia</td><td>_____/s_____<br>T. S. Ellis, III<br>United States District Judge</td></tr>
</table>