IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 1:05cr225 |
| | ) | |
| | ) | |
| STEVEN J. ROSEN and | ) | |
| KEITH WEISSMAN | ) | |

## ORDER

This matter is before the Court on defendants' motion to suppress statements made by defendants to FBI agents on August 3, August 9, and August 27, 2004. Defendants contend that their statements to the FBI agents on these dates were involuntary because the agents used false statements and trickery to inveigle or induce defendants to refrain from invoking their Fifth Amendment right to remain silent and to seek assistance of counsel. The statements at issue are two August 3, 2004 recorded telephone conversations between the FBI agents and defendants, as well as defendants' statements made in various interviews with FBI agents on August 3, 9, and 27, 2004.

Defendants contend they were deceived about the true nature and purpose of the government's inquiry. In particular, defendants contend FBI agents were not forthcoming about the fact that the government was investigating defendants, stating or implying instead that the FBI agents wished to interview defendants either (i) to utilize Weissman's foreign policy expertise, or (ii) for the purpose of a security investigation of alleged co-conspirator Lawrence Franklin. In one instance, an FBI agent, responding to a direct query from Rosen, specifically denied that the interviews related to a criminal investigation. This trickery and deception,

defendants argue, renders all the defendants' statements to the FBI agents involuntary, until the point in time that the agents truthfully disclosed to defendants during separate August 27 interviews that the interviews of defendants related to a serious national security investigation. At this point, each defendant invoked his right to counsel and the interviews ceased.

No Supreme Court or Fourth Circuit decision has ever suppressed a defendant's statements on the sole ground that false statements by law enforcement officers to the defendant rendered the statements involuntary. At most, courts consider police deception or trickery as one factor to consider in a totality of the circumstances assessment of voluntariness. *See Frazier v. Cupp*, 394 U.S. 731, 737, 739 (1969) (defendant's admission during custodial interrogation held voluntary under totality of circumstances, including that police falsely claimed co-defendant confessed and implicated defendant).

Defendants chiefly rely on *United States v. Olmstead*, 698 F.2d 224, 226 (4th Cir. 1983), for its statement that, in addition to physical coercion, "fraud, deceit, or trickery, even silence when there is a duty to speak, may suffice" to render a defendant's statement involuntary. In *Olmstead*, the defendant was interviewed in his home, and after being Mirandized, agreed to proceed with an IRS interview on, as he put it, condition that his statements not be used against him. The interviewing agent did not agree to this condition, choosing instead to remain silent. Nonetheless, the defendant proceeded with the interview. *Olmstead*, 698 F.2d at 226. On these facts, the Fourth Circuit held the statements voluntary. *Id.* at 227.

*Olmstead* is of no aid to defendants. Unlike the defendants in that case, defendants here made no request or demand that their statements not be used against them. Moreover, the trickery in *Olmstead* – apparently a claim that the IRS agent's silence was duplicitous – was

insufficient to render the interview statements involuntary. At best, then, *Olmstead*, as is true of many decisions, stands for no more than the general proposition that government agents' false statements or trickery are simply one factor among many in the totality of the circumstances to weigh in the voluntariness calculus.

It is doubtful that government trickery alone is sufficient to render a person's statements involuntary.[1] Yet even assuming that extreme forms of government trickery, without more, may render a defendant's statement involuntary, the false statements and trickery in this case fall far short of this. As already noted, government deceit does not render a statement made in reliance thereon *per se* involuntary; it is merely one of the facts to be evaluated in the totality-of-the-circumstances voluntariness inquiry. *See Olmstead*, 698 F.2d at 226 (holding that trickery must be "assessed against the factual background of the accused and the interrogation" to determine voluntariness). Here, all the circumstances accompanying the alleged deceit compel the conclusion that all of the statements were voluntary. Defendants are well-educated and were aware of their rights; indeed, Weissman explicitly contemplated bringing counsel to his interview. The agents made no threats or promises to defendants. There is no allegation the

---

[1] *See Johnson v. Harkleroad*, 104 Fed. Appx. 858 at *6 n.3 (4th Cir. 2004) (Gregory, J.) ("police may engage in some misrepresentation without rendering a suspect's resulting confession involuntary or coerced.") (citing cases); *United States v. Kontny*, 238 F.3d 815 (7th Cir. 2001) (Posner, J.) ("[T]rickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless the government agents make threats or promises."); *see also* LaFave et al., 2 Criminal Procedure § 6.2(c) at 456 (2nd ed. 1999) ("as a general matter it may be said that the courts have not deemed [trickery] sufficient by itself to make a confession involuntary.") (internal citations omitted). It is worth noting here that while courts have suppressed statements where police affirmatively promised that a defendant's statements would not be used against him at trial, they have admitted statements where the defendant made incriminating statements on the erroneous assumption that his statements would not be used against him and the government made no such promises. *Compare* LaFave et al., *supra* § 6.2(c) at 458 n.122 *with Olmstead*, 698 F.2d at 226.

agents were hostile or intimidating during the telephone calls or interviews. Indeed, a review of the recordings makes clear that no such allegation is warranted. All the interviews were non-custodial, and took place in comfortable, familiar surroundings – defendants' offices and homes, and public places nearby.[2] In sum, the alleged deception in this case is insufficient to render the statements involuntary. Indeed, a contrary conclusion would be the death knell of all undercover operations, which, to succeed, necessarily require a level and degree of deception and false statements far greater than that presented here.[3]

It is also worth noting, but not determinative, that it appears the defendants were not actually deceived about the nature of the FBI agents' inquiry. Thus, the recorded telephone call between defendants reflect that the agents' vague statements about the reason for the August 3 telephone calls made the defendants (especially Weissman) skeptical that this was merely a background investigation for employment or a security clearance re-authorization. Indeed, both defendants recognized that the FBI agents might well be investigating their alleged conversation with a Washington Post reporter. Nonetheless, defendants elected to proceed with the interviews. Even the statement most deceptive in defendants' view – the answer, in response to a

---

[2] Defendants argue that the amicable, comfortable nature of their interactions with the FBI agents was part of the ruse intended to lull them into believing the investigation was just a routine investigation of Franklin. Even if true, it does not compel the conclusion that the statements were involuntary.

[3] Defendants seek to avoid this claim by arguing that the instant situation is in fact more deceptive than an undercover operation, because here someone "known to the defendants to be an FBI agent deceived the defendants about their status as targets and misled the defendants into waiving their constitutional rights." They add that defendants dealing with law enforcement agents who represent themselves as such should be able to "rely on an assurance" from an agent about whether the defendant should his assert constitutional rights. This argument does not rescue defendants' position, as the false statements and trickery involved in numerous decisions came from clearly-identified law enforcement officers. *See, e.g., Olmstead*, 698 F.2d at 224-25.

question from Rosen in his initial telephone conversation with an FBI agent, that this was not a criminal investigation – does not appear to have deceived Rosen. In his next conversation with Weissman after his initial interview, Rosen expressed skepticism that the investigation was merely a security clearance re-authorization for Franklin. Instead he stated, "my intuition is that they probably are investigating [Franklin] for something... ." In sum, the defendants were aware that something was afoot that was quite different from the agents' representations. Their decision to proceed with the telephone calls and interviews was a product of an unimpaired "capacity for self-determination." *See United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987).

      Accordingly, for the above-stated reasons and for good cause,

      It is hereby **ORDERED** that the motion to suppress (docket no. 274) is **DENIED**.

      The Clerk is directed to send a copy of this Order to all counsel of record.

_____/s_____
Alexandria, Virginia  
February 14, 2007

T. S. Ellis, III  
United States District Judge