**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:05cr225 |
| | ) | |
| STEVEN J. ROSEN | ) | |
| KEITH WEISSMAN | ) | |

**ORDER**

At issue in this Espionage Act[1] prosecution is defendants' pretrial motion for reciprocal discovery. The government has filed a response to defendants' motion in this regard and the matter is ripe for disposition. Oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record and additional oral argument would not aid in the decisional process.

Defendants Steven J. Rosen and Keith Weissman have been charged in a superseding indictment with conspiracy to communicate information relating to the national defense (NDI) to persons not authorized to receive it, in violation of 18 U.S.C. §§ 793(g) and (e).[2] Rosen has also been charged with aiding and abetting a co-defendant — Lawrence Franklin — in Franklin's unauthorized communication of NDI to persons not authorized to receive it, in violation of 18 U.S.C. § 793(d) and 2.[3]

---

[1] 18 U.S.C. § 793 *et seq.*

[2] NDI is information that is both closely held by the United States government and potentially damaging to the United States if disclosed. *See United States v. Rosen*, 445 F. Supp. 2d 602, 618-22 (E.D. Va. 2006) (Memorandum Opinion denying defendants' motion to dismiss).

[3] For a more complete recitation of the superseding indictment's allegations, see *Rosen*, 445 F. Supp. 2d at 607-10.

In the course of pretrial proceedings, defendants, by counsel, have served requests for witness subpoenas on various government agencies for twenty current and former government officials in accordance with federal regulations adopted pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and the so-called Housekeeping Statute, 5 U.S.C. § 301.[4]  Pursuant to the applicable *Touhy* regulations, defendants claim they have been required to provide various government agencies — and the prosecution, as well — certain information well-beyond that which would otherwise be required under the federal criminal discovery rules.  Specifically, defendants claim that the *Touhy* regulations have required them to disclose information to the government concerning various defense theories, exhibits and potential witnesses, as well as the anticipated testimony of those witnesses.

In addition to the required *Touhy* disclosures, defendants also point out that they have been required to disclose to the government a large volume of material in accordance with Sections 5 and 6(a) of the Classified Information Procedures Act (CIPA), 18 U.S.C., App. 3.  In this regard, defendants were first required to disclose to the government pursuant to CIPA § 5 any classified information they "reasonably expect[] to disclose or to cause the disclosure of...in any manner in connection with any trial or pretrial proceeding involving the [instant] criminal prosecution... ." 18 U.S.C., App. 3, § 5(a).  Thereafter, in the course of lengthy CIPA § 6(a) proceedings, defendants were required to disclose additional information to the government concerning, *inter alia*, the proposed use and relevance of specific items of classified information previously identified by

---

[4]  Requests for subpoenas served on government agencies are typically referred to as "*Touhy* notices" — so named because they comply with regulations adopted by each government agency dictating specific procedures that must be followed in order to subpoena any employee of that agency, the use of which regulations was upheld by the Supreme Court in the *Touhy* case. *Touhy* and the regulations adopted pursuant to the Housekeeping Statute essentially allow for the "centralizing [of an agency's] determination as to whether subpoenas...will be willingly obeyed or challenged." *Touhy*, 340 U.S. at 468.

defendants in their CIPA § 5 notice as information they expect to be disclosed at trial.  18 U.S.C. App. 3, § 6(a).

The thrust of the instant motion is defendants' contention that their required *Touhy* and CIPA disclosures have resulted in a discovery imbalance in favor of the government.  In other words, defendants contend that they have been compelled by *Touhy* and CIPA to produce material, identify witnesses and reveal anticipated testimony and defenses far beyond what the government has been required to produce.  According to defendants, the Due Process clause requires that this discovery imbalance be redressed by requiring the government to provide the defense additional reciprocal discovery.  In this regard, defendants specifically request, *inter alia*, that the government be directed (i) to produce all evidence it will use to rebut the testimony of the government officials defendants seek to call to testify at trial, and (ii) to identify and set forth in writing the nature and relevance of the testimony of all government officials the government intends to call as witnesses in this case.  For the reasons set forth below, defendants' motion for reciprocal discovery must be denied.

Analysis properly begins with an assessment of the factual basis for defendants' motion, namely the existence of a discovery imbalance in the government's favor.  This assessment discloses that defendants' claim fails factually at the threshold:  There is no imbalance.  The government, to date, has provided defendants with voluminous discovery relevant to the charges against them. Indeed, measured in terms of either volume or materiality, it is clear that the discovery information already produced by the government in this case far exceeds anything provided by the defendants, as such discovery has included, *inter alia*, thousands of pages of unclassified documents, hundreds of pages of classified documents and dozens of hours of recorded conversations.  Defendants have also received from the government in discovery numerous photographs, video recordings and

investigative reports relevant to the charged offenses. In sum, then, defendants' claim is factually infirm as the record refutes defendants' contention that the parties' pretrial discovery obligations have been unfair in any respect, let alone so imbalanced as to rise to the level of a constitutional violation, as defendants argue.

Defendants' claim that their required *Touhy* and CIPA disclosures tip the scale in favor of the government in violation of defendants' due process rights reflects an exaggerated view of the nature and significance of these disclosures. Defendants' *Touhy* notices, for example, reflect only testimony defendants have some reason to believe various current and former government officials may provide at trial.[5] Defendants cannot be certain that these current and former officials will testify as they forecast because, unlike the government, defendants do not have access to these persons. Given this, the government is likely more familiar than defendants with the nature of the testimony the officials may provide at trial. Likewise, a significant portion of defendants' CIPA § 5 notice dealt with classified information that the government had previously provided to defendants in the course of this prosecution and thus that the government already had in its possession. Much of defendants' CIPA and *Touhy* material is therefore of limited discovery value to the government, despite defendants' arguments to the contrary.

Nor do the cases cited by defendants support their reciprocal discovery request. In this regard, defendants rely primarily on *Wardius v. Oregon*, 412 U.S. 470 (1973), a case in which the Supreme Court expressly held that "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants," noting

---

[5] Again, *Touhy* notices are not designed to be discovery devices for the prosecution, but are instead designed to enable government agencies to make a determination regarding the release of confidential government information that a defendant seeks to elicit at trial.

specifically that "in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street." *Id.* at 472, 475. Yet, unlike the Oregon alibi statute at issue in *Wardius*, CIPA imposes disclosure obligations not only on the defense, but also on the government, resulting essentially in the reciprocal discovery defendants seek in the instant motion.[6] And significantly, courts have consistently and sensibly rejected the argument that CIPA is unconstitutional under *Wardius*.[7] The Federal Rules of Criminal Procedure — unlike the Oregon criminal rules at the time *Wardius* was decided — also place significant discovery obligations on the government that inure to the benefit of defendants generally, and to these defendants specifically.[8] In sum, therefore, "because the burdens of discovery under CIPA and the Federal Rules of Criminal Procedure are carefully balanced, Defendant[s'] due process claim is without merit." *Lee*, 90 F. Supp. 2d 1329.

Moreover, it is clear that the instant case falls squarely within the exception to equal reciprocal discovery recognized by the Supreme Court in *Wardius* given that a "strong showing of state interests" has been presented here. *Wardius*, 412 U.S. at 475. Indeed, CIPA is designed to

---

[6] Oral argument in the course of the CIPA hearings themselves can likewise result in the disclosure to the defense of additional discovery material, as well, as doubtless occurred here. For example, while defendants were indeed required to explain in the course of the CIPA § 6(a) proceedings the relevance and admissibility of the classified information they wish to disclose at trial, the government likewise explained its respective relevancy and admissibility theories as to certain evidence, thus providing defendants with additional discovery information to which they would not otherwise be entitled under the federal rules.

[7] *See United States v. Bin Laden*, 2001 WL 66393, *5 (S.D.N.Y. 2001); *United States v. Lee*, 90 F. Supp. 2d 1324, 1329 (D. N.M. 2000); *United States v. Ivy*, 1993 WL 316215, **4-5 (E.D. Pa. 1993); *United States v. Poindexter*, 725 F. Supp. 13, 34-35 (D. D.C. 1989); *United States v. North*, 708 F. Supp 399, 401 (D. D.C. 1988).

[8] In this regard, the Supreme Court recognized that "Oregon grants no discovery rights to criminal defendants, and, indeed, does not even provide defendants with bills of particulars." *Id.* at 475. This obviously stands in stark contrast to the current Federal Rules of Criminal Procedure.

protect important classified national security information and therefore "entail[s] the kind of strong state interest that may justify an exchange of information between the prosecution and the defense that is not entirely reciprocal." *United States v. North*, 910 F.2d 843, 902 n.41 (D.C. Cir. 1990) (citing *Wardius*, 412 U.S. at 475), *superseded in part*, 920 F.2d 940 (D.C. Cir. 1990).

Defendants' *Touhy* obligations and corresponding disclosures to the government likewise do not violate defendants' constitutional rights or mandate additional reciprocal discovery in this instance. The only authority cited by defendants to the contrary is a split decision from the Ninth Circuit, *United States v. Bahamonde*, 445 F.3d 1225 (9th Cir. 2006). In that criminal prosecution for the importation of marijuana, the district court excluded the trial testimony of the arresting Customs and Border Protection agent on the ground that Bahamonde had failed to comply with 6 C.F.R. § 5.45(a) — the Department of Homeland Security's *Touhy* regulation — requiring a defendant to "set forth in writing, and with as much specificity as possible, the nature and relevance of the official information sought" from a proposed Department of Homeland Security witness. *Id.* at 1228. Relying primarily on the Supreme Court's decision in *Wardius*, and expanding that decision far beyond its original confines, a divided panel of the Ninth Circuit ultimately reversed Bahamonde's conviction and remanded for a new trial, holding that "the [applicable *Touhy*] regulation, as applied in this criminal prosecution, violates due process by failing to provide reciprocal discovery." *Id.* at 1229.

*Bahamonde* is both unpersuasive and inapplicable for several reasons. First, while the Ninth Circuit correctly noted in *Bahamonde* that "[n]othing in *Wardius* [expressly] limits its reasoning to alibi defenses or trial processes entirely lacking in discovery," the court failed to accord sufficient significance to the compelling distinguishing factor in *Wardius* — namely the complete lack of

discovery rights afforded criminal defendants under the then-existing Oregon state procedural rules. As previously noted, the Federal Rules of Criminal Procedure, in contrast to the then-existing Oregon statute, place significant and detailed discovery obligations on the government. Indeed, as sensibly recognized by the *Bahamonde* dissent, "[d]iscovery in criminal cases is governed by a detailed, well-defined, specific set of rules" and courts should "not blithely transpose a regulation governing release of documents into a non-sanctioned amendment to Rule 16." *Id.* at 1232 (Rawlinson, J., dissenting). But more importantly, the Ninth Circuit failed to recognize in *Bahamonde* that the *Touhy* regulations, like CIPA, inject into the reciprocal discovery analysis precisely the "strong showing of state interests" contemplated in *Wardius* — namely the centralized agency determination regarding the release of confidential government information, and particularly NDI, as involved here.[9] It is clear, therefore, that the *Bahamonde* reasoning is fatally flawed and that the instant prosecution falls squarely within the recognized exception to the reciprocal discovery requirement recognized in *Wardius*.

Nor does the Court's inherent authority to uphold fairness and justice support defendants' reciprocal discovery request in this instance, as defendants contend.[10] As previously noted, the

---

[9] *Wardius*, 412 U.S. at 475. Indeed, as the Supreme Court itself noted in *Touhy* that,

> [w]hen one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether subpoenas duces tecum will be willingly obeyed or challenged is obvious.

*Touhy*, 340 U.S. at 468.

[10] *See, e.g., United States v. Beckford*, 962 F. Supp. 748, 754-55 (E.D. Va. 1997) (stating that "numerous courts, including the Fourth Circuit, have recognized that the discovery provisions in Rules 12.2 and 16(b) are not exclusive and do not supplant a district court's

record reflects that defendants have already received from the government a substantial amount of information that is both relevant and material to the charged offenses, and the government's continuing discovery obligations will doubtless result in the disclosure of additional material as the case progresses. Defendants, in turn, have been required to disclose to the government only that which is constitutionally authorized by federal statute and regulation pursuant to CIPA and *Touhy*. In the circumstances, therefore, it is clear that defendants' pretrial discovery obligations have not been unfair in any respect, let alone so imbalanced as to rise to the level of a constitutional violation, and general issues of fairness and justice thus do not warrant the additional reciprocal discovery requested by defendants in the instant motion.

For the foregoing reasons, and for good cause,

It is hereby **ORDERED** that defendants' motion for reciprocal discovery (docket #360) is **DENIED**.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, VA
October 24, 2007

_____/s/_____
T. S. Ellis, III
United States District Judge

---

inherent authority to order discovery outside the rules") (citations omitted); Rule 57(b), Fed. R. Crim. P. (recognizing that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district"); Rule 16, Advisory Committee Notes (recognizing that "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled...[and] is not intended to limit the judge's discretion to order broader discovery in appropriate cases").